UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENNIS HOBSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 4:09CV00960 AGF |
| ) | |
| DON ROPER, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the petition of Missouri state prisoner Dennis Hobson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of second-degree murder and armed criminal action arising out of events that occurred on July 13, 2004. He was sentenced to the maximum sentence of two consecutive life terms of imprisonment.

For federal habeas relief, Petitioner asserts that his constitutional rights were violated in the following ways:

> (1) Defense counsel was ineffective for failing to call an expert witness to testify regarding the victim's cause of death;
>
> (2) Defense counsel was ineffective for failing to request a jury instruction for involuntary manslaughter; and
>
> (3) The sentencing court improperly imposed the maximum sentence based on his own personal views of the evidence and on conduct for which Petitioner was acquitted by the jury.

Respondent argues that federal habeas relief must be denied because the state court's adjudication of each of these claims was not factually or legally unreasonable. The Court agrees, and for the reasons set forth below, habeas relief shall be denied.

## BACKGROUND

### Trial

The Missouri Court of Appeals summarized the evidence presented at trial as follows. Petitioner does not challenge the accuracy of this summary and this Court's review of the trial transcript confirms that the summary is fair and accurate.

> Defendant and Maxine Cheeks ("Cheeks") were engaged in a romantic relationship. After a night of drinking and smoking crack cocaine with his sister and Cheeks, Defendant could not find his weights and asked Cheeks where they were. Dissatisfied with Cheeks' answer, he asked his sister to go to the store and took Cheeks into a bedroom. Alone with Cheeks, Defendant insisted that Cheeks had brought someone into the house and began to beat her.
>
> Unable to beat Cheeks with his hand because it was broken, Defendant picked up a three foot long board covered with duct tape, nicknamed the "control stick," and hit Cheeks with it. When Defendant's sister returned from the store, she asked if Defendant was done. Defendant responded, "No," and asked his sister to return to the store[. H]e then resumed beating Cheeks.
>
> Upon realizing he had beaten Cheeks to death, Defendant decided to turn himself in to the police. After loading Cheeks' body into a car and depositing the body on the side of the road, Defendant admitted to police that he beat Cheeks to death. Police thereafter traveled to the crime scene where they recovered from the bedroom the board covered in duct tape and a hammer.

To the above, the Court adds the following. At trial, the court admitted the hammer seized from Petitioner's residence as well as a picture of the hammer, over

defense counsel's objection that the exhibits were irrelevant. Also during the trial, a forensic pathologist testified for the state that the victim died of internal bleeding as a result of being violently struck more than 60 times with a blunt object. Defense counsel cross-examined the expert about the injuries and the significance of cocaine metabolites found in the victim's blood. The expert testified that the presence of cocaine did not contribute to the victim's death. Defense counsel did not call an expert witness to refute the testimony of the State's expert.

At voir dire and during trial, defense counsel stated that he was pursuing a voluntary manslaughter conviction. The jury was given instructions for first-degree and second-degree murder, voluntary manslaughter, and armed criminal action. Defense counsel did not request an instruction on involuntary manslaughter, nor was such an instruction given. The jury returned a verdict finding Petitioner guilty of second-degree murder and armed criminal action. At sentencing, the judge told Petitioner, "this is certainly one of the more brutal murders that I have encountered in my time on the bench. I think the jury gave you the benefit of the doubt on the deliberation issue." The judge sentenced Petitioner as a prior violent offender to life imprisonment on each count of conviction, with the sentences to run consecutively.

**Direct Appeal**

The only argument that Petitioner raised on direct appeal was that the trial court erred in overruling his objection to the admission of the hammer and a photograph of the

hammer. The Missouri Court of Appeals rejected the argument and affirmed the conviction and sentence.

**Postconviction Proceedings**

In an amended motion for state postconviction relief, prepared with the assistance of appointed counsel, Petitioner raised three claims: (1) defense counsel was constitutionally defective for his failure to call an independent medical examiner who would have testified that the victim's death was most likely a sudden death due to a heart attack brought on by the beating and cocaine abuse; (2) defense counsel's representation was constitutionally defective for his failure to submit an instruction on involuntary manslaughter; and (3) the sentencing judge used his own personal view of the evidence in imposing the strictest sentence possible, based upon conduct for which Petitioner was acquitted by the jury.

The motion court[1] rejected Petitioner's first ineffective assistance of counsel argument on the ground that Petitioner failed to contend that an independent medical examiner would have testified that Petitioner's actions did not cause or contribute to the cause of the victim's death, and that medical evidence of sudden death would not have undercut the evidence that Petitioner's beating caused the victim's death or that Petitioner acted knowingly. The court concluded that defense counsel's decision not to call an

---

[1] The same judge who presided at trial ruled on Petitioner's postconviction motion.

expert witness was part of a reasonable trial strategy and was within the range of reasonable professional assistance.

The court rejected Petitioner's second contention that his counsel was ineffective, holding that the evidence indicated that Petitioner did not act recklessly. The court explained that a defendant is not entitled to a lesser-included offense instruction if it is not supported by the evidence, and regardless, an objectively reasonable choice to not submit an available instruction did not constitute ineffective assistance of counsel. Further, the jury found Petitioner guilty of second-degree murder even in the face of an instruction on voluntary manslaughter. Thus, the court held, there was no reasonable basis to contend that a jury would have convicted Petitioner on an even lesser degree of homicide had it been instructed to do so.

Lastly, the court rejected Petitioner's argument that the sentence imposed was unconstitutional, noting that the court's challenged remarks did not indicate disagreement with the jury's verdict, or an intention to punish Petitioner for going to trial. The court stated that it "used its broad discretion in assessing punishment, and did so only on the basis of the crimes in which [Petitioner] was convicted." (Resp. Ex. F. at 49-50.)

Finding no error, the Missouri Court of Appeals affirmed the denial of postconviction relief, essentially on the same grounds relied upon by the trial court. In addition, the appellate court noted that Petitioner's claim that the court imposed an improper sentence failed on procedural grounds, as Petitioner was required to raise such a claim on direct appeal, not on a motion for postconviction relief.

# DISCUSSION

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996,

> [f]ederal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).

"This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt. The petitioner carries the burden of proof." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations omitted).

"For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87; *see also Hardy v.*

*Cross*, 132 S. Ct. 490, 491 (2011) (AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.") (quoting another source).

**Failure to Call an Independent Forensic Expert**

As noted above, Petitioner asserted that defense counsel was constitutionally ineffective for failing to call a forensic expert. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To succeed on a claim of ineffective assistance of trial counsel, a habeas petitioner must establish both "that counsel's representation fell below an objective standard of reasonableness," and that but for counsel's deficiency there is "a reasonable probability" that the result of the trial would have been different. *Id*. at 688, 694. In determining whether the performance of counsel was deficient, the challenged conduct must be "viewed as of the time of counsel's conduct." *Id.* at 690. When the issue involves a matter of trial strategy, there is a strong presumption that the strategy was sound and does not amount to ineffective assistance. *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Williams v. Bowersox*, 340 F.3d 667, 672 (8th Cir. 2003).

Here, the State courts reasonably held that defense counsel was not ineffective in this matter. As the state courts held, medical evidence of sudden death would not have undercut the evidence that Petitioner's beating caused the victim's death or that Petitioner acted knowingly. Thus neither deficient performance nor prejudice has been shown. *See Ray v. Roper*, No. 4:08CV01467 JCH, 2010 WL 2985683, at *4 (E.D. Mo. July 23,

- 7 -

2010) (rejecting habeas petitioner's claim of ineffective assistance based on defense counsel's failure to call a forensic expert to rebut the state's forensic evidence as to cause of the victim's death; "[d]ecisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second guessed by hindsight") (citation omitted).

**Failure to Request an Involuntary Manslaughter Instruction**

Petitioner's second claim of ineffective assistance of counsel is based on defense counsel's failure to request an instruction on involuntary manslaughter. Under Missouri Law, a person who "[r]ecklessly causes the death of another person" commits involuntary manslaughter. Mo. Rev. Stat. § 565.024.1(1). "A person 'acts recklessly' or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." *Id*. §562.016.4. Involuntary manslaughter is a lesser included offense of murder in the second degree. *Id.* §565.025.

The Missouri courts determined that Petitioner's trial counsel did not act unreasonably by failing to request the lesser-included offense instruction, because Petitioner was not entitled to such an instruction under Missouri law, based on the facts of the case. This Court may not "second-guess the decision" of the state courts on this matter of state law. *See Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012) (citing *Bounds v. Delo*, 151 F.3d 1116, 1118 (8th Cir. 1998)). Upon review of the record, the

Court concludes that the state courts' adjudication of this claim was neither factually nor legally unreasonable. *See id.* (finding that defense counsel did not act unreasonably in failing to request a jury instruction on false imprisonment as a lesser-included offense of kidnapping in Missouri state court where no construction of the facts would have supported that instruction).

Furthermore, because the United States Supreme Court has never required the instruction of lesser included offenses in noncapital cases, the Missouri Court of Appeals reasonably applied federal law when it rejected this claim of ineffective assistance of defense counsel. *See Williams v. Lawrence*, No. 4:09CV165 CDP, 2011 WL 6097127, at *5 (E.D. Mo. Dec. 7, 2011).

**Propriety of the Sentence**

A state criminal sentence may violate federal law if the trial court relied on "misinformation or misreading of court records," *Townsend v. Burke*, 334 U.S. 736, 741 (1948), or based the sentence on factors "that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant." *Zant v. Stephens*, 462 U.S. 862, 885 (1983). Here, the record supports the state courts' determination that the sentencing judge did not consider constitutionally impermissible factors. Unlike in *Townsend*, the record here warrants no conclusion that the defendant "was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." 334 U.S. at 742. Petitioner does not argue that his sentences were disproportionately severe under the Eighth Amendment. In

sum, there is no basis to find that the state courts' rejection of Petitioner's challenge to his sentence was contrary to or an unreasonable application of clearly established federal law.

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Dennis Allen Hobson for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of June, 2012.